Judge McMahon

*ORIGINAL*

**09 CIV 8967**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| NEOSTEM, INC., | ) Civil Action No. |
| Plaintiff, | ) |
| | ) **COMPLAINT FOR TRADEMARK** |
| v. | ) **INFRINGEMENT, FALSE** |
| | ) **ADVERTISING,** |
| DR. WANG TAIHUA | ) **CYBERSQUATTING, UNFAIR** |
| Defendant. | ) **COMPETITION, FALSE** |
| | ) **DESIGNATION OF ORIGIN,** |
| | ) **BREACH OF CONTRACT,** |
| | ) **TORTIOUS INTERFERENCE,** |
| | ) **AND UNLAWFUL AND** |
| | ) **DECEPTIVE ACTS AND** |
| | ) **PRACTICES** |
| | ) **DEMAND FOR JURY TRIAL** |

---

## COMPLAINT

Plaintiff NEOSTEM, INC. ("NeoStem" or "Plaintiff") alleges the following

for its Complaint against Defendant DR. WANG TAIHUA ("Wang" or "Defendant"):

## THE PARTIES

1.    Plaintiff NeoStem, Inc. is a corporation organized and existing under the

laws of Delaware, with its principal offices at 420 Lexington Avenue Suite 450, New

York, NY 10170.

2.    Defendant Dr. Wang Taihua is an individual, upon information and belief,

having an address at Shandong New Medicine Research Institute of Integrated

Traditional and Western Medicine Co. Ltd., Room 603, Mid-shichejian Building, No.

978 of Tianchen Main Street, High-tech Development Zone, Jianan, China.

1

## JURISDICTION AND VENUE

3.     This is an action for trademark infringement, cybersquatting, false advertising, unfair competition and false designation of origin in violation of the Trademark Act of 1946, 15 U.S.C. §§ 1051, *et seq.*, as amended ("Lanham Act"), and for breach of contract, tortious interference, unlawful and deceptive acts and practices, trademark infringement and unfair competition in violation of common law and the laws of the State of New York.

4.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332 and 1338(a) and (b); and the Lanham Act. This Court has jurisdiction, pursuant to the principles of supplemental jurisdiction and 28 U.S.C. § 1367, over Plaintiff's claims for breach of contract, tortious interference, unlawful and deceptive acts and practices, trademark infringement and unfair competition in violation of common law and the laws of the State of New York.

5.     This Court has personal jurisdiction over Defendant in that Defendant conducts business throughout the State of New York, including this District and has substantial contacts throughout the State of New York, including this District. In addition, Wang has specifically consented to submit to jurisdiction in this District and by this Court. Specifically, in Section 5(i) of the Support Agreement of November 2, 2008 between NeoStem and Wang, as described further herein, parties agrees that disputes between them shall be adjudicated in this District. Other agreements between NeoStem and Wang in which no jurisdiction is specified for disputes nonetheless stipulate that New York law shall apply.

2

6.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a) in that Defendant is transacting business within this District. In addition, Wang has specifically consented to submit to jurisdiction in this District and by this Court. Specifically, in Section 5(i) of the Support Agreement of November 2, 2008 between NeoStem and Wang, as described further herein, parties agrees that disputes between them shall be adjudicated in this District and that New York law shall be applied. Other agreements between NeoStem and Wang in which no jurisdiction is specified for disputes nonetheless stipulate that New York shall apply.

## INTRODUCTION

7.      This lawsuit is brought to seek redress for Wang's massive breach of the express terms of his confidentiality and non-compete agreements with NeoStem as well as breaches of other agreements with NeoStem, infringement of NeoStem's VSEL™ trademark, false advertising, cybersquatting, misappropriation of NeoStem's confidential information and trade secrets, and other wrongs against NeoStem.

8.      NeoStem is a leading biotechnology firm in the adult stem cell arena. In addition to providing pre-disease collection, processing and long-term storage of adult stem cells for future medical needs, NeoStem owns the exclusive commercial rights in and to a particular stem cell technology know as VSEL™ technology, for which NeoStem also owns exclusive trademark rights.

9.      In 2008, NeoStem began to deal extensively with Wang when it planned to acquire control of a certain Chinese medical business for which Wang is the principal. As part of this acquisition process, NeoStem provided Wang with access to NeoStem's confidential information and know-how, including confidential information relating to

3

NeoStem's proprietary VSEL™ technology. Wang signed various agreements in his individual capacity promising to keep this highly-sensitive information confidential, not to make any use of this information and not to compete with NeoStem in this area for at least two (2) years following termination of the agreement.

10. Instead, Wang has launched several new business ventures including at least three separate English-language internet web sites brazenly offering to provide the same stem-cell collection and medical services as NeoStem in direct competition to NeoStem and, upon information and belief, using NeoStem's confidential information.

11. On all three of these internet web sites, Wang offers to provide "VSEL" and "VSELCN" technology and even claims that his organizations invented such technology. This is a blatant attempt to confuse consumers as to the source of VSEL™ technology. One of these sites is located at www.vselcn.com, which domain name infringes NeoStem's VSEL™ trademark and which Wang has registered. Wang has also registered the infringing domain name vsel.org.

12. Upon information and belief, Wang has also sent letters to business affiliates and prospective business affiliates disparaging NeoStem and claiming that he is a provider of superior VSEL™ technology.

13. NeoStem has been irreparably harmed by Wang's breaches and infringements as described further herein.

14. It now being apparent that Wang has no respect for NeoStem's intellectual property and no compunction with violating the terms of the contracts he has entered into with NeoStem, NeoStem files this suit seeking a permanent injunctive relief.

4

## FACTUAL BACKGROUND

### NeoStem and NeoStem's Use of the VSEL™ Mark

15.    NeoStem is a leading biotechnology firm in the adult stem cell arena and a pioneer in the pre-disease collection, processing and long-term storage of adult stem cells for future medical need. NeoStem is the first biotechnology company to provide adult stem cell collection and banking services to the general adult population.

16.    Stem cells are very primitive and undifferentiated cells that have the unique ability to transform into many different cells, such as white blood cells, nerve cells or heart muscle cells. Stem cells can be found throughout the body, but are found in higher concentrations in the bone marrow and "mobilized" peripheral blood of adults.

17.    Adult stem cell technology involves the extraction, growth and transformation of a patient's stem cells into specialized cells that can be introduced into the patient's body. Adult stem cell technology is already being used in the treatment of various diseases and conditions, and it is generally believed that as medical technology develops, adult stem cells will increasingly be used in the treatment of even more diseases and impairments.

### VSEL Technology and NeoStem's Use of the VSEL™ Mark

18.    In addition to providing adult stem cell banking and collection services, NeoStem has recently expanded its research and development with a particular stem cell technology relating to a recently-discovered type of adult stem cells.

19.    NeoStem owns the exclusive commercial rights in this technology as well as exclusive rights in and to the trademark VSEL™, which it has adopted in relation to this technology and for which NeoStem has already built up substantial goodwill.

5

20. Specifically, on November 17, 2007, NeoStem acquired the exclusive worldwide license to use VSEL™ technology for commercial purposes from the University of Louisville.

21. In connection with this license agreement, NeoStem also entered into a sponsored research agreement with the University of Louisville, pursuant to which NeoStem funds research relating to its VSEL™ technology at the laboratory of the co-inventor of this technology, Mariusz Ratajczak, M.D., Ph.D., head of the Stem Cell Biology Program at the James Graham Brown Cancer Center at the University of Louisville.

22. NeoStem began using the trademark VSEL™ (the "VSEL™ Mark" to identify its services at least as early as November 2007 and has used the VSEL™ Mark substantially, exclusively and continuously since then.

23. On October 21, 2009, NeoStem applied to register the trademark VSEL with the United States Patent and Trademark Office under Application No. 77853532. Such application is currently pending.

24. NeoStem markets and advertises its VSEL™ services to consumers in a variety of ways including via its web site neostem.com.

25. As a result of this promotion and advertising, the VSEL™ trademark has become known to relevant consumers and potential consumers throughout the United States and the world who widely associate VSEL™ with NeoStem's services and technology.

26. Like other biotechnology companies, a large part of NeoStem's value lies in its technological capabilities, research and development and know-how. This

6

proprietary information is of inestimable value to NeoStem and would be of great value to a competitor. NeoStem goes to great lengths to protect its confidential and proprietary information.

*Contemplated Acquisition of Shandong New Medicine Research Institute*

27.     In 2008, NeoStem began doing business in the People's Republic of China ("China") and Hong Kong.

28.     NeoStem has been actively exploring acquisition opportunities in China and Hong Kong, and elsewhere, including businesses that are synergistic with NeoStem's current business or additive to its current business.

29.     In 2008, as part of these expansion efforts, NeoStem explored the possibility of acquiring the following related China and Hong Kong-based medical entities: China StemCell Medical Holding Limited, Shandong New Medicine Research Institute of Integrated Traditional and Western Medicine Limited Liability Company ("Shandong"), Beijing HuaMaiTai Bio-technology Limited Liability Company and Zhao Shuwei, the sole shareholder of the China StemCell Medical Holding Limited (collectively, the "Potential Acquirees") by means of a share exchange agreement (the "Share Exchange Agreement").

30.     The Share Exchange Agreement was executed on November 2, 2008.

31.     At all times during NeoStem's involvement with Shandong, one of the Potential Acquirees, Wang was the director of Shandong. In the course of all of NeoStem's interactions with Shandong, Wang presented himself to NeoStem's representatives as Shandong's key leader and decision maker.

7

32.     Wang signed the Share Exchange Agreement and many other related agreements on Shandong's behalf as Shandong's legal representative.

33.     Upon information and belief, prior to the date of the Share Exchange Agreement, Shandong and Wang did not engage in any stem cell extraction or banking services, did not possess any stem cell technology, including technology relating to NeoStem's VSEL™ technology, did not possess any specialized equipment for stem cell research or stem cell-related medical procedures and did not have access to any actual stem cells.

34.     Upon information and belief, Shandong and Wang were first introduced to the concept and application of NeoStem's VSEL™ technology by and through its involvement with NeoStem.

35.     As part of the Share Exchange Agreement, Wang met extensively with NeoStem's representatives both in the US. and in China. NeoStem also briefed Wang on its specific plans to develop its VSEL™ technology in the U.S. and China.

36.     Wang traveled to New York twice in 2008 and again in 2009 to meet with representatives of NeoStem. During this time, NeoStem provided Wang with extensive access to NeoStem's confidential information and know-how including information about NeoStem's VSEL™ and other technology and planned therapeutic uses for VSEL™ and other technology in relation to various heart, skin and nerve treatments.

37.     In 2008, in anticipation of the acquisition of Shandong, NeoStem representatives brought Wang to Mountainville, CA and to Boston, MA where they gave Wang tours of particular facilities that NeoStem uses to process and store stem cells.

38.    In 2008, also in anticipation of the acquisition of the Potential Acquirees, NeoStem representatives brought Wang to meet NeoStem affiliate Dr. Vincent Giampapa in Montclair, NJ, where Dr. Giampapa demonstrated various cosmetic and anti-aging techniques to Wang.

39.    In January 2009, various representatives or employees of NeoStem, including research scientists, visited Beijing, China to attend a conference on adult stem cell technology. Wang was extensively involved in the planning and logistics for this China visit. Wang attended this conference as a guest of NeoStem. During this visit, Wang was provided with extensive access to NeoStem's confidential information and know-how including information about NeoStem's VSEL™ technology.

40.    As part of the Share Exchange Agreement, NeoStem was entitled to perform various due diligence, and Shandong and the other Potential Acquirees were required to make various disclosures to NeoStem before the closing of the share exchange deal. Pursuant to the Share Exchange Agreement, NeoStem could opt not to close the share exchange deal with the Potential Acquirees.

41.    For a variety of reasons, NeoStem elected in or around July 2009 not to complete the share exchange with the Potential Acquirees.

### NeoStem's Agreements with Wang

42.    Various other agreements were consummated in conjunction with the proposed acquisition and the Share Exchange Agreement.

43.    On November 2, 2008, Wang, in his individual capacity, executed a Confidentiality, Proprietary Information and Inventions Agreement ("Confidentiality Agreement") with NeoStem.

9

44.     The Confidentiality Agreement protects NeoStem's proprietary

information as well as its inventions, trademarks, copyrights and other intellectual

property. The Confidentiality Agreement defines "Proprietary Information" as follows:

> "Proprietary Information" shall mean information relating to the Business or the
> business of any Business Partner and generally unavailable to the public that has
> been created, discovered, developed or otherwise has become know to [NeoStem]
> or in which property rights have been assigned or otherwise conveyed to
> [NeoStem] or a Business Partner, which information has economic value or
> potential economic value to the business in which [NeoStem] is or will be
> engaged.  Proprietary Information shall include, but not be limited to, trade
> secrets, processes, formulas, writings, data, know-how, negative know-how,
> improvements, discoveries, developments, designs, inventions, techniques,
> technical data, patent applications, customer and supplier lists, financial
> information, business plans or projections and any modifications or enhancements
> to any of the above.

The Confidentiality Agreement defines "Inventions" as follows:

> "Inventions" shall mean all Business-related discoveries, developments, designs,
> improvements, inventions, formulas, software programs, processes, techniques,
> know-how, negative know-how, writings, graphics and other data, whether or not
> patentable or registrable under patent, copyright or similar statutes, that are
> related to or useful in the business or future business of [NeoStem] of its Business
> Partners or result from use of premises or other property owned, leased or
> contracted for by [NeoStem].  Without limiting the generality of the foregoing,
> Inventions shall also include anything related to the Business that derives actual
> or potential economic value from not being generally known to the public or to
> other persons who can obtain economic value from its disclosure or use.

45.     As part of the Confidentiality Agreement, Wang agreed that the

Proprietary Information and Inventions were and would remain the sole property of

NeoStem. The Confidentiality Agreement also states that NeoStem "shall be the sole

owner of all patents, trademarks, service marks, copyrights and other rights pertaining to

Proprietary Information and Inventions."

46.     As part of the Confidentiality Agreement, Wang represented that prior to

his dealings with NeoStem, he did not possess any confidential or proprietary information

10

relating to NeoStem's business. Indeed, upon information and belief, prior to the date of the Share Exchange Agreement, Wang did not possess any knowledge or experience relating to stem cell technology and were first introduced to the concept and application of NeoStem's VSEL™ technology by and through his involvement with NeoStem in relation to the proposed acquisition.

47.    As part of the Confidentiality Agreement, Wang agreed that he would keep the Proprietary Information "in the strictest confidence and trust" and "not disclose or use or permit the use or disclosure of any Proprietary Information or Rights pertaining to Proprietary Information."

48.    As part of the Confidentiality Agreement, Wang agreed that his obligation to keep the Proprietary Information and Inventions confidential and not use them would survive the cessation of his relationship with NeoStem "whether the cessation is voluntary or involuntary, for any reason or no reason."

49.    Also as part of the Confidentiality Agreement, Wang agreed to various non-competition and non-solicitation provisions. One such provision was as follows:

> During my Relationship and for a period of two (2) years after the Cessation of my Relationship, I agree not to plan or otherwise engage in any business enterprise that would be in competition with [NeoStem] in [NeoStem's Business].

50.    Wang's cessation of his relationship with NeoStem ended on or around July 2009. Thus, this non-competition provision is valid until at least July 2011.

51.    The Share Exchange Agreement contains explicit confidentiality provisions similar in scope to those of the Confidentiality Agreement as well as provisions that these confidentiality provisions will survive the termination of the Share Exchange Agreement.

52.     The Share Exchange Agreement also contains explicit provisions prohibiting the Potential Acquirees' use of the proprietary information learned through the planned share exchange other than for the purposes of NeoStem's business.

53.     In connection with the Share Exchange Agreement, NeoStem and Wang executed the "Support Agreement" on November 2, 2008, wherein Wang, in his individual capacity, made certain representations to NeoStem to induce NeoStem to consummate the Share Exchange Agreement with Shandong.

54.     In the Support Agreement, Wang represented and warranted that he had reviewed all of Shandong's representations and warranties in the Share Exchange Agreement and they were all were true and correct.

55.     In the Support Agreement, Wang, in his individual capacity, agreed that he would cause Shandong to abide by all of Shandong's covenants in the Share Exchange Agreement.

56.     The Support Agreement states that Wang's representations and warranties made as part of Support Agreement shall be valid until March 31, 2010.

### Wang's Launch of the Infringing VSELCN Site

57.     Upon information and belief, in or around August 2009, despite Wang's extensive confidentiality and non-compete obligations under the Confidentiality Agreement, Support Agreement and other agreements, Wang began doing business in direct competition with NeoStem marketing a technology under the guise of NeoStem's own technology and NeoStem's VSEL™ Mark.

12

58.    Upon information and belief, Wang is performing these infringing actions
under the name World Anti-aging Organization Co., Ltd. ("WAAO"), among other
names.

59.    Through his WAAO operations, Wang is offering to perform adult stem
cell extraction and storage as well as other medical treatments using VSEL™ technology.

60.    Upon information and belief, Wang, through his WAAO operations, is
using NeoStem's Proprietary Information and Inventions, offering such Proprietary
Information and Inventions to others, and directly competing with NeoStem in blatant
violation of the Confidentiality and Support Agreements.

61.    On or about August 14, 2009, Wang registered the domain name
vselcn.com. Shortly thereafter, Wang launched a web site at www.vselcn.com to
promote his WAAO venture (the "VSELCN Web Site"). According to Internet
Corporation for Assigned Names and Number's ("ICANN") "Whois" records, the
registrant of vselcn.com is "Jia Hongjie." Upon information and belief, this registrant is
one and the same as the Jia Hongjie, who is Wang's assistant. Indeed, the Support
Agreement states that correspondence to Wang should be sent to the attention of
"Hongjie Jia."

62.    According to ICANN's Whois records, the registrant organization of
vselcn.com is "Shandong New Medicine Co., Ltd.," which upon information and belief is
a variation of Shandong, the entity that Wang controls.

63.    Upon information and belief, the VSELCN Web Site is operated and
controlled solely by Wang.

13

64.     Upon information and belief, on the same day vselcn.com was registered,
Wang also registered the domain name vsel.org. Indeed, according to ICANN'S
"Whois", the registration information for vsel.org is identical to that of vselcn.com.

65.     The VSELCN Web Site is written in English and intended for consumers
in the United States, Canada and Western Europe.

66.     The VSELCN Web Site is hosted on an internet server belonging to
internet service provider Godaddy.com, Inc. and located in the United States. It is
common practice for China-operated web sites targeting American customers to have
their web sites hosted on servers in the United States so that potential American
customers can access these sites quickly and easily.

67.     The letters "cn" are a common abbreviation for China. Indeed, one of
ICANN's top-level domains to indicate that a web site originates from China is ".cn".

68.     In registering and using vselcn.com, Wang intends to confuse consumers
by making them believe that WAAO is the Chinese provider of VSEL™ technology or
that WAAO is affiliated with NeoStem. In fact, the site VSELCN Web Site uses the
words "VSEL" and "VSELCN" interchangeably.

69.     The VSELCN Web Site is filled with blatant falsehoods relating to
Wang's and WAAO's achievements and qualifications. On the VSELCN Web Site,
Wang lists many achievements and credentials of WAAO that are actually those of
NeoStem.

70.     For example, Wang falsely claims that WAAO has developed a
technology called VSELCN. In fact, Wang and WAAO have developed no such
technology. Wang's only exposure to VSEL™ technology was through his access to

14

NeoStem's Proprietary Information and Inventions when Shandong was one of the Potential Acquirees as part of the Share Exchange Agreement.

71.    On the VSELCN Web Site, Wang makes the following additional false claims:

> a. Wang claims that "in May, 2009, the Sino-US stem cell experts conference was held in Qingdao, P.R.China" and that "[i]n the conference, our CEO Dr. Taihua Wang gave a comprehensive generalization about stem cell therapy and the application of stem cells in the cosmetology in China. In addition, he also displayed our newly innovated cosmetology technique-VSELCN technique to all of the experts." In fact, this conference occurred in January 2009. Wang only attended in his then-relationship with NeoStem because Shandong was one of the Potential Acquirees. At the conference, Wang did not perform the demonstration he claims nor did he perform any other demonstration or introduce VSELCN technology.

> b. Wang claims that "VSELCN is a independently innovated technique by World Anti-aging Organization Co., Ltd. in combination with Harward [sic] University, University of Louisville, Seoul National University, Lakehead University, National Academy of Military Medical Sciences and Peking Union Medical College. We are preparing for applying patent technology." In fact, Wang has not developed any VSEL™ technology let alone in conjunction with these universities. In actuality, NeoStem has affiliations with all of these universities. NeoStem acquired the

15

worldwide exclusive license to use VSEL™ technology for commercial purposes from University of Louisville and has also entered into a sponsored research agreement with University of Louisville, pursuant to which NeoStem funds research relating to its VSEL™ technology at the laboratory of the co-inventor of this technology, Mariusz Ratajczak, M.D., Ph.D., head of the Stem Cell Biology Program at the James Graham Brown Cancer Center at University of Louisville.

c. On the VSELCN Web Site, Wang falsely claims to have affiliation with several leading stem-cell researchers including Dr. Wayne Marasco, Dr. Vincent Giampapa, Dr. Jiang Guohui and Dr. Mariusz Ratajczak, which are all in fact affiliated with NeoStem. Dr. Wayne Marasco, Dr. Vincent Giampapa, Dr. Jiang Guohui and Dr. Mariusz Ratajczak have had no affiliation with WAAO or Dr. Wang, and these claims are false. Wang is using Dr. Marasco's, Dr. Jiang's, Dr. Giampapa's and Dr. Ratajczak's names and identities on the VSELCN Web Site without their permission.

*Wang's Infringing NSCCENTER and UNIQUESTEMCELL Sites*

72. Upon information and belief, in addition to the VSELCN Site, Wang is operating at least two other ventures on two separate internet web sites that promote entities that directly compete with NeoStem and that are designed to appear to use NeoStem's Proprietary Information and Inventions and NeoStem's VSEL™ Mark.

16

73.     Upon information and belief, Wang is also performing infringing actions under the name the Neural Stem Cell Therapy Center ("NSC Center") and operating the web site located at www.nsccenter.com (the "NSC Web Site").

74.     On the NSC web sites, NSC Center purports to be part of Shandong.

75.     Upon information and belief, on or about August 14, 2009, the same day vselcn.com and vsel.org were registered, Wang also registered the domain name nsccenter.com. Shortly thereafter, Wang launched the NSC Web Site. According to ICANN's "Whois" records, the registrant's name is "Jia Hongjie," the same registrant as the vselcn.com and vsel.org domain names. Upon information and belief, this registrant is one and the same as the Jia Hongjie, who is Wang's assistant. Indeed, the Support Agreement states that correspondence to Wang should be sent to the attention of "Hongjie Jia."

76.     According to ICANN's Whois records, the registrant organization is "Shandong New Medicine Co., Ltd.," which upon information and belief is a variation of Shandong, the entity that Wang controls.

77.     Upon information and belief, the NSC Web Site is operated and controlled solely by Wang.

78.     The NSC Web Site is written in English and intended for consumers in the United States, Canada and Western Europe.

79.     The NSC Web Site is hosted on an internet server belonging to internet service provider Godaddy.com, Inc. and located in the United States. As stated above, it is common practice for China-operated web sites targeting American customers to have

17

their web sites hosted on servers in the United States so that potential American customers can access these sites quickly and easily.

80.    Through his NSC Center operations, Wang is offering to perform stem-cell extraction and storage as well as other and medical treatments using VSEL™ technology.

81.    Upon information and belief, Wang, through his NSC Center operations, is using NeoStem's Proprietary Information and Inventions, offering such Proprietary Information and Inventions to others, and directly competing with NeoStem in blatant violation of the Confidentiality and Support Agreements.

82.    Like the VSELCN Web Site, the NSC Web Site is filled with blatant falsehoods relating to Wang's and the NSC Center's achievements and qualifications. The web site lists many achievements and credentials of the NSC Center that are actually those of NeoStem.

83.    Upon information and belief, Wang is also performing infringing actions under yet another name, the China Stem Cell Medicine Holding Company, Ltd. ("China Stem Cell") and operating at www.uniquestemcelltreatment.com (the "Unique Stem Cell Site")

84.    Through his China Stem Cell operations, Wang is offering to perform stem-cell extraction and storage as well as other and medical treatments using VSEL™ technology.

85.    Upon information and belief, Wang, through his China Stem Cell operations, is using NeoStem's Proprietary Information and Inventions, offering such

18

Proprietary Information and Inventions to others, and directly competing with NeoStem in blatant violation of the Confidentiality and Support Agreements.

86.     Like the NSC and VSELCN Web Sites, the Unique Stem Cell Site is filled with blatant falsehoods relating to Wang's and China Stem Cell's achievements and qualifications. The web site lists many achievements and credentials of the China Stem Cell that are actually those of NeoStem.

*Wang's Solicitation of NeoStem's Affiliates*

87.     In addition to launching the infringing VSELCN, NSC and Unique Stem Cell Site Web Sites and related entities, Wang has willfully and maliciously sought to damage NeoStem by disparaging NeoStem in the eyes of its various affiliates, business partners and/or potential affiliates and business partners.

88.     Upon information and belief, Wang has sent letters to various affiliates, business partners and/or potential affiliates and business partners of NeoStem seeking to do business with such entities.

89.     Upon information and belief, these letters claim that NeoStem's VSEL™ technology is outdated and ineffective and that Wang's VSELCN technology is superior.

90.     As stated above, in actuality, NeoStem owns the worldwide exclusive right to all commercial application of VSEL™ technology. Any VSEL™ technology know-how that is in Wang's possession came from his access to the Proprietary Information and Inventions as part of the never-consummated share exchange and was stolen from NeoStem by Wang.

91.     Such statements by Wang violate the non-compete and non-solicitation provisions of the Confidentiality Agreement. In addition, such statements further

19

exemplify Wang's theft and use of the Proprietary Information and Inventions, in violation of the Confidentiality Agreement, Support Agreement and other agreements.

## CLAIMS AGAINST WANG

## COUNT ONE

## BREACH OF CONTRACT

92.    NeoStem realleges, and incorporates by this reference, each and every allegation set forth in Paragraphs 1 through 91 of this Complaint as if fully set forth herein.

93.    NeoStem has performed each and every one of its obligations under the Support Agreement and the Confidentiality Agreement with Defendant.

94.    As described above, Defendant has breached the Support Agreement and the Confidentiality Agreement in the following ways:

- a.   Defendant breached his obligations of confidentiality by, upon information and belied, making use of such Proprietary Information and Inventions and offering such to third parties.

- b.   Defendant failed to return Proprietary Information and Inventions to NeoStem following termination of the Share Exchange Agreement.

- c.   Defendant unfairly competed with NeoStem by engaging in businesses directly competitive with NeoStem within two (2) years following the termination of the Confidentiality Agreement.

- d.   Defendant unfairly competed with NeoStem by soliciting customers and potential customers of NeoStem within two (2) years following the termination of the Confidentiality Agreement.

20

e. Defendant breached his obligations under the Support Agreement by causing Shandong to violate the covenants of the Share Exchange Agreement.

95.     As a proximate and legal result of Defendant's material breaches of the Support Agreement and Confidentiality Agreement, NeoStem has suffered significant damages.

## COUNT TWO
## TORTIOUS INTERFERENCE

96.     NeoStem realleges, and incorporates by this reference, each and every allegation set forth in Paragraphs 1 through 95 of this Complaint as if fully set forth herein.

97.     Wang was and is subject to the Confidentiality Agreement described above, which among other things, prohibits Wang from soliciting NeoStem's customers within two years of termination or no earlier than January 1, 2011.

98.     Wang tortiously interfered with NeoStem's business relations by contacting NeoStem's business partners and affiliates and potential business partners and affiliates and making disparaging remarks about NeoStem's business and VSEL™ technology in an attempt to lure such businesses away from NeoStem.

99.     Wang's misrepresentations and disparagements of NeoStem were made for the purpose of causing NeoStem's business partners and affiliates and/or potential business partners and affiliates to cease or refrain from doing business with NeoStem.

21

100.   Wang's misrepresentations and disparagements of NeoStem were willful, malicious, and fraudulent.

101.   As a proximate and legal result of Wang's tortious interference, NeoStem has suffered significant damages.

## COUNT THREE

## CONVERSION

102.   NeoStem realleges, and incorporates by this reference, each and every allegation set forth in Paragraphs 1 through 101 of this Complaint as if fully set forth herein.

103.   Wang has taken and used NeoStem's Proprietary Information, Inventions and other intellectual property without NeoStem's permission.

104.   As a proximate and legal result of Wang's conversion, NeoStem has suffered significant damages.

## COUNT FOUR

## FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)

105.   NeoStem realleges, and incorporates by this reference, each and every allegation set forth in Paragraphs 1 through 104 of this Complaint as if fully set forth herein.

106.   Without NeoStem's authorization, and having full knowledge of NeoStem's well-known and prior rights in the VSEL™ Mark, Wang formed WAAO, NSC Center and China Stem Cell to advertise and market technological services virtually identical to NeoStem's VSEL™ technology.

22

107.    Wang is marketing and selling his infringing VSEL™ services and technology to consumers in direct competition with NeoStem's marketing and sale of genuine VSEL™ services both in the US, China and around the world.

108.    Wang's use of copies or simulations of the VSEL™ Mark is likely to cause and has caused confusion, mistake and deception among potential customers and relevant consumers as to the origin of the services, and is likely to deceive and has deceived the public into believing the services offered and sold by Wang originate from, or are associated with or are otherwise authorized by NeoStem, all to the damage and detriment of NeoStem's reputation, goodwill and sales.

109.    As a proximate and legal result of Wang's trademark infringement, NeoStem has suffered significant damages.

## COUNT FIVE
## FALSE ADVERTISING
## (15 U.S.C. §1125(a))

110.    NeoStem realleges, and incorporates by this reference, each and every allegation set forth in Paragraphs 1 through 109 of this Complaint as if fully set forth herein.

111.    Through the VSELCN, NSC and Unique Stem Cell Web Sites, Wang has made false and misleading descriptions of fact and a false representation of fact in a commercial advertisement about the VSEL™ and VSELCN services and technology he is claiming to provide.

23

112. Wang's misrepresentations through the VSELCN, NSC and Unique Stem Cell Web Sites are material in that they are likely to influence the purchasing decisions of relevant consumers.

113. Wang's misrepresentations through the VSELCN, NSC and Unique Stem Cell Web Sites actually deceive or have the tendency to deceive a substantial segment of his audience.

114. Through the VSELCN, NSC and Unique Stem Cell Web Sites, Wang has placed these false and misleading statements in interstate commerce.

115. NeoStem has been and is likely to be injured as a result of these misrepresentations by both direct diversion of sales and/or investments by a lessening of goodwill associated with its VSEL™ services and technology under the VSEL Mark.

116. As a proximate and legal result of Wang's trademark infringement, NeoStem has suffered significant damages.

## COUNT SIX

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
## (15 U.S.C. § 1125(a))

117. NeoStem realleges, and incorporates by this reference, each and every allegation set forth in Paragraphs 1 through 116 of this Complaint as if fully set forth herein.

118. The services offered by Defendant are of exactly the same nature and type as the services offered by NeoStem in connection with its VSEL™ Mark and, as such, Defendant's marketing and sale of such services is likely to cause confusion and has caused confusion to consumers.

24

119.    By misappropriating and using the VSEL™ Mark, Defendant

misrepresents and falsely describes to the general pubic the origin and source of its

services and creates a likelihood of confusion by ultimate purchasers as to both the source

and sponsorship of such services.

120.    Defendant's unlawful, unauthorized and unlicensed offer for sale and sale

of the infringing services creates express and implied misrepresentations that these

products were created, authorized or approved by NeoStem, all to Defendant's profit and

to NeoStem's great damage and injury.

121.    Wang's aforesaid acts are in violation of Section 43(a) of the Lanham

Act, 15 U.S.C. § 1125(a), in that Defendant's use of the VSEL™ Mark, in connection

with their goods and services, constitutes a false designation of origin and unfair

competition.

122.    As a proximate and legal result of Wang's trademark infringement,

NeoStem has suffered significant damages.

## COUNT SEVEN

## COMMON LAW TRADEMARK AND TRADE NAME INFRINGEMENT

123.    NeoStem realleges, and incorporates by this reference, each and every

allegation set forth in Paragraphs 1 through 122 of this Complaint as if fully set forth

herein.

124.    NeoStem has built up valuable goodwill in the VSEL™ Mark.

125.    The services offered by Defendant in connection with the VSEL™ Mark

are not genuine NeoStem services. NeoStem did not authorize or approve such services.

25

Defendant is not authorized to offer or provide such services in connection with the VSEL™ Mark.

126.    The use by Defendant of the VSEL™ Mark in connection with the marketing and providing of stem cell technology services is likely to cause and has caused confusion, mistake or deception of the relevant consumers.

127.    Defendant's acts of trademark and trade name infringement cause confusion and mislead and deceive the pubic as to the source of Defendant's services, permit Defendant to pass off these services as NeoStem's, and falsely suggests a connection between Defendant and NeoStem and will continue to do so, in violation of the common law of the State of New York.

128.    With full knowledge of the fame of the VSEL™ Mark, Defendant has traded on the goodwill associated with the VSEL™ Mark and has mislead the public into assuming a connection between his services and those of NeoStem.

129.    Defendant's unauthorized use of the VSEL™ Mark and trade names permits Defendant to pass off his services to the consuming public as those of NeoStem, all to the detriment of NeoStem and the unjust enrichment of Defendant.

130.    As a result of Defendant's infringing activities, NeoStem has suffered significant damages.

26

## COUNT EIGHT

## DECEPTIVE ACTS AND PRACTICES UNDER NEW YORK STATE LAW

### (New York General Business Law § 349)

131.    NeoStem realleges, and incorporates by this reference, each and every allegation set forth in Paragraphs 1 through 130 of this Complaint as if fully set forth herein.

132.    The use and employment by Defendant of the aforesaid unfair methods of competition and/or unfair or deceptive acts or practices constitute a violation of New York Law, for which NeoStem has a remedy and a right of recovery.

133.    As a proximate result of the unfair method of competition and/or deceptive acts or practices of Defendant, NeoStem has suffered significant damages.

## COUNT NINE

## CYBERSQUATTING

### (15 U.S.C. § 1125(d))

134.    NeoStem realleges, and incorporates by this reference, each and every allegation set forth in Paragraphs 1 through 133 of this Complaint as if fully set forth herein.

135.    Defendant has registered, trafficked in or used domain names as that are confusingly similar to NeoStem's VSEL™ Mark, including vselcn.com and vsel.org.

136.    NeoStem's VSEL™ Mark was distinctive at the time of Defendant's registration of the infringing veselcn.com and vsel.org domain names.

137.    Defendant has committed these acts with a bad faith intent to profit from NeoStem's VSEL™ Mark.

27

138.   NeoStem further requests an order of forfeiture or cancellation of the veselcn.com and vsel.org domain names or transfer of such domain names to NeoStem.

139.   Defendant's conduct will continue unless enjoined by this Court.

140.   As a direct result of Defendant's willful and unlawful actions, NeoStem has suffered and continues to suffer irreparable harm, including damage to and diminution in value of NeoStem's VSEL™ Mark, for which there is no adequate remedy at law. Accordingly, NeoStem is entitled to injunctive and equitable relief.

141.   As a proximate result of the unfair method of competition and/or deceptive acts or practices of Defendant, NeoStem has suffered significant damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1.   That Defendant, and his agents, affiliates, representatives, confederates, successors and assigns, and all persons and entities acting for, with, by, through, or under him be permanently enjoined directly or indirectly from (a) infringing NeoStem's Proprietary Information, Inventions and other intellectual property including NeoStem's VSEL™ technology, (b) competing with NeoStem in any way for the duration of the non-compete period, (c) offering or providing goods and services in connection with the VSEL™ or VSELCN Marks, (d) operating the VSELCN, NSC and Unique Stem Cell Web Sites or any other web sites containing VSEL in domain name and/or hosting similar content to the VSELCN, NSC and Unique Stem Cell Web Sites on any other web site, (e) falsely advertising VSEL™ technology and services and (f) tortiously interfering with NeoStem's business; and

2.      That Defendant be required to effectuate the recall, removal, and return from commercial distribution and/or public display of any products or services or marketing and advertising for such products and services bearing or being provided in connection with the VSEL™ or VSELCN Marks or any promotional and/or advertising materials in connection therewith; and

3.      That Defendant be required to deliver up for destruction all of the items called for by Paragraph 2 of this Prayer for Relief, above, as well as any remaining products, advertising, packaging, web sites or other materials bearing the VSEL™ or VSELCN Marks; and

4.      That Defendant, within thirty (30) days after service of judgment with notice of entry thereof upon it, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth the details of how Defendant has complied with Paragraphs 1 through 3 of this Prayer for Relief, above;

5.      For an order of forfeiture or cancellation or transfer to Plaintiff of any domain name that is confusingly similar to VSEL™, including but not limited to, vselcn.com and vsel.org.

6.      For an order directing any web host or internet service provider to cease hosting the VSELCN, NSC and Unique Stem Cell Web Sites or any other web sites operated by or in connection with Defendant containing VSEL in domain name and/or containing similar content to the VSELCN, NSC and Unique Stem Cell Web Sites.

7.      For such other and further relief as may be elected by Plaintiff.

8.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

hereby demands a jury trial on all triable issues raised by this Complaint.

Respectfully submitted,

Dated: October 23, 2009            GREENBERG TRAURIG, LLP

By:

G. Roxanne Elings  (GE 8321)
Scott Gelin (SG 9599)
200 Park Avenue
New York, New York 10166
Tel: (212) 801-9200
Fax: (212) 801-6400

*Attorneys for Plaintiff
NeoStem, Inc.*